# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| GEOVERA SPECIALTY INSURANCE CO., | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | 10-00528-CB |
| v. | ) | |
| KEITH B. GLINES, DEBORAH A. GLINES and JONATHAN MICHAEL GLINES, | ) | |
| Defendants. | ) | |

## **OPINION and ORDER**

This matter is before the Court on a motion for summary judgment filed by the Plaintiff, GeoVera Specialty Insurance Company. (Doc. 46.) The Defendants have failed to respond to the motion thereby admitting that no factual dispute exists. *See* Local Rule 7.2(b). After careful consideration of the undisputed facts in light of the applicable law, the Court finds that the Plaintiff is entitled to summary judgment.

**Facts**

In 2008, GeoVera Specialty Insurance Company (GeoVera) issued a homeowners insurance policy (the Policy) to Defendants Keith B. Glines and Deborah A Glines effective March 5, 2008 to March 5, 2009. Keith Glines, Deborah Glines and their son Jonathan Michael Glines, also a Defendant, (collectively "the Glineses") are "insureds" under the policy. GeoVera is a California corporation with its principal place of business in California. The Glineses are Alabama citizens.

The Policy provides coverage for personal liability and medical payments to others. Under the policy GeoVera must pay up to the policy limit of liability for damages and provide a defense by counsel of its choice "[i]f a claim is made or a suit brought against an 'insured' for damages based on 'bodily injury' or 'property damage' caused by an 'occurrence' to which coverage applies." (Homeowner's Policy, Doc. 46-2, 1-2 .) The Policy essentially defines "occurrence" as an accident. (*Id.* 17.) Medical payments to others include "necessary medical expenses" as the result of an accident involving "bodily injury" of the "insured location" if the accident was "caused by the activities of an 'insured'." (*Id.* 16.) The Policy excludes coverage for personal liability and medical payments expected or intended injury, i.e., bodily injury or property damage intentionally inflicted by the insured. (*Id.* 17.) However, intentionally inflicted injury is covered if it results from "the use of 'reasonable force' by an insured to protect persons or property." (*Id.*) The policy specifically excludes assault and battery from the definition of "occurrence" and further excludes from coverage bodily injury or property damage arising out of assault and battery. (Special Provisions, *id.*, 1.)

On February 5, 2009, Keith Glines notified GeoVera of a May 6, 2008 incident involving Jonathan for which he sought coverage under the policy. Keith Glines told GeoVera in a recorded statement that on May 6, 2008 at South Baldwin Technical School Jonathan "jumped on" another student, who Jonathan suspected had taken his sunglasses, and "beat him up" until "the boy confessed." (K. Glines' Recorded Stmt., Doc. 46-4, 5.) Jonathan provided GeoVera with a written statement of the incident in which he stated that he saw the other student, Jerry Wallace Porter, Jr., go into the bathroom and come back out quickly immediately after his glasses disappeared from a classroom table. (Jonathan Glines' Stmt., Doc. 46-6.) Later that day Jonathan found his sunglasses hidden in the bathroom ceiling. (*Id.*) The next day Jonathan went

to the principal about the incident. (*Id.*) When the principal failed to do anything, Jonathan talked to Porter who denied that he had taken the sunglasses. Jonathan went to his classroom and grew angrier. (*Id.*) He then returned to Porter's classroom and "started fighting him" until Porter confessed to having taken the sunglasses. (*Id.*) Jonathan did not intend to get into a fight but wanted Porter to admit that he took the sunglasses. (*Id.*)

In his deposition, Jonathan gave a slightly different account of the incident in that the entire episode took place over the course of one day rather than two. Jonathan testified that he set his sunglasses on a table during welding class while he went to talk to his teacher, and when he next looked, his sunglasses were gone. Jonathan suspected Porter had taken his sunglasses, so he followed him out of the classroom and asked if he had done so; Porter said he had not. Jonathan followed Porter as he entered another building. As Jonathan entered the second building, Porter was leaving the bathroom. Jonathan asked Porter to return his sunglasses, but Porter just "kind of bumped into [him] on his way out [of the building] and said 'good luck' or something." Jonathan went into the restroom and found his sunglasses above a ceiling tile. Jonathan retrieved his sunglasses and reported the incident to the principal. Jonathan asked the principal if either the school or the police could "do anything to punish" Porter for taking the sunglasses. The principal "said no. So [Jonathan] got up and walked out [of his office]." (J. Glines Dep., Doc. 46-7, 9-13.) Jonathan then went back to his welding class, where "[s]omeone" told him that Porter was in another teacher's, (Mrs. Cane), classroom." (*Id.*) Jonathan described the events that followed:

> A. And I had my sunglasses back. I walk over [to Mrs. Cane's room].
>
> . . .
>
> A. I had the glasses. I said I found the glasses.
>
> BY COUNSEL FOR GEOVERA:
>
> Q. Who did you tell that to?

> A. Jerry [Porter].
>
> . . .
>
> A. And said I found my glasses. Why don't you just apologize? And he still wouldn't admit it and all that. And I hit him and he finally admitted it. And I told him, I said, I bet you will never steal anything from me or anybody else around here again. So he never did.
>
> . . .
>
> Q. And who hit whom first?
>
> A. I hit him first.
>
> Q. And you had your sunglasses with you at that time?
>
> A. They were - - yes.
>
> . . .
>
> Q. Why did you hit Mr. Porter?
>
> A. I hit him defending my property. I was scared that he was going to end up taking them again or just keep taking people's junk.
>
> Q. After you confronted him in Mrs. Cane's room, and before you hit him but after you confronted him, did he try to take the sunglasses from you?
>
> A. He did take the sunglasses.
>
> Q. No. No. When you were in Mrs. Cane's room, when you confronted him about the sunglasses, did he try to take them from you again?
>
> A. No.

(*Id.* 16-19.)

As a result of the May 6, 2008 incident, Porter sustained a "fracture of the left frontal sinus," which required surgical correction. Porter incurred approximately $42,361.33 in medical expenses as a result of the May 6, 2008 incident. Following its investigation of the May 6, 2008 incident, GeoVera formally denied the Glineses' claim based on the Policy's exclusions of

personal liability coverage for claims arising out of an intentional injury and those arising out of an assault and battery.

On May 6, 2010, Porter filed his Complaint against the Glineses in Baldwin County Circuit Court seeking to recover damages for the injuries and medical expenses he incurred as result of the May 6, 2008 incident. Specifically, Porter alleged as follows:

> That on or about the 6th day of May, 2008, the Defendant Jonathan Michael Glines, committed an assault and battery on Plaintiff, JERRY WALLACE PORTER, JR., by repeatedly beating him over and over, causing serious personal injuries . . ., which assault and battery seriously injured and disfigured Jerry Wallace Porter, Jr. and caused permanent impairment.

(Doc. 46-1, ¶ 1.)

Upon receipt of notice of the filing of the Complaint, GeoVera provided the Glineses with a legal defense under a full reservation of rights. Subsequently, GeoVera filed the instant Declaratory Judgment Action seeking a determination from this Court as to whether it has an obligation to defend and/or indemnify the Glines in the underlying lawsuit under the terms of the Policy.

**Conclusions of Law**

*Jurisdiction and Standard of Review*

The Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332 (diversity of citizenship). The standard a court must apply when reviewing a motion for summary judgment is well-settled. Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608

(11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* Where the moving party also has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citations and internal quotation marks omitted; emphasis in original).

*Discussion*

The issue in this case is straightforward—whether GeoVera has a duty to defend and indemnify the Glineses in the underlying state court action. Basic principles of policy interpretation apply.

> [A]mbiguities in the language of an insurance policy are construed in favor of the insured, rather than the insurer. Although an insurance company is entitled to write a policy with narrow limits of liability, to do so it must use precise language. Any exceptions from coverage present in an insurance policy are construed narrowly, so as to provide the maximum coverage for the insured.

*Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 669 (11th Cir. 1985).

According to the uncontroverted evidence, including his own testimony, Jonathan Glines assaulted Jerry Wallace Porter, Jr., resulting in injury to Porter. The injury was therefore

6

intentional, and the exclusion for expected or intended injury applies.[1] Jonathan's deposition testimony suggests that he might be relying on a narrow exception to this exclusion. If the insured used "reasonable force" to protect persons or property, then the intentional injury exclusion does not apply. Jonathan testified that he was only protecting his property when he attacked Porter, but no reasonable person could have perceived any threat to property at the time Jonathan struck Porter. The Glineses are not entitled to a defense or indemnification from GeoVera.

*Conclusion*

For the reasons set forth above, the Court finds that the motion for summary judgment is due to be and hereby is **GRANTED** and that GeoVera is entitled to a declaratory judgment in its favor. Judgment will be entered by separate order.

**DONE** and **ORDERED** this the 26th day of September, 2011.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[1] The incident is, in all likelihood, also excluded from coverage under the assault and battery exclusion. The Court need not rely on that exclusion and chooses not to do so because reliance would require discussion of juvenile court proceedings.